**Joseph A. ANDREWS et al.**

v.

**Arthur G. BROWN et al.**

**No. 91–310–Appeal.**

Supreme Court of Rhode Island.

Feb. 28, 1992.

Robert Anderson, East Providence, for plaintiffs.

Michael F. Horan, Pawtucket, for defendants.

## OPINION

PER CURIAM.

This matter was before this court pursuant to an order issued to both parties to appear and show cause why the issues raised in this appeal should not be summarily resolved.

The plaintiffs, Joseph A. Andrews and Elizabeth A. Andrews, appeal from the denial of their request for declaratory and injunctive relief. After reviewing the memoranda submitted by both parties and after hearing their counsel in oral argument, this court concludes that plaintiffs' appeal should be summarily sustained.

The plaintiffs are the owners of a mobile home that for the past twenty years has been located in the Parkside Terrace Mobile Home Park (park). The defendants, Arthur G. Brown and Beverly G. Brown, are the owners of this park. Pursuant to the statutory scheme of G.L.1956 (1982 Reenactment) chapter 44 of title 31, defendants promulgated standards relating to roof and width requirements that plaintiffs' mobile home does not meet. These two standards

are written as follows: "[a] pitched shingled roof in good condition and repair" and "[a] minimum width of fourteen (14) feet for a single mobile home unit." The record indicates that a majority of mobile homes in the park do not meet these standards.

Section 31–44–1.1, as amended by P.L. 1990, ch. 309, § 2, created a mobile- and manufactured-home commission within the State Department of Business Regulation. The commission has among its duties the responsibility to promulgate rules to implement chapter 44 of title 31, and to establish a uniform policy governing mobile- and manufactured-home use. Pursuant to § 31–44–3, as amended by P.L.1991, ch. 217, § 1, the commission adopted a code requiring mobile-home park owners to promulgate their own rules and regulations. The defendants did so and their written standards—including the standards described above—apparently were submitted to and accepted by the commission. Under § 31–44–4(f)(4), as amended by P.L. 1984, ch. 382, § 2, defendants claim the right to require removal of a mobile home that is being sold if it does not conform to the standards described above.

Accordingly defendants informed plaintiffs that they would require removal of their mobile home should it be sold because it did not meet the width and roof standards.

The trial justice found that the roof and width standards were neither discriminatory nor unreasonable in light of the statutory guidelines of § 31–44–4. We disagree. Section 31–44–1.5, as amended by P.L.1984, ch. 382, § 2, states, "The commission shall promulgate a mobile and manufactured home code. The code shall consist of rules governing: (a) The licensure of mobile and manufactured home parks including standards to protect *health, safety* and *welfare* of mobile and manufactured home park residents." (Emphasis added.)

The clear intent of § 31–44–1.5 is to provide for the licensing of mobile-home parks and the acceptance of such park standards that protect the *health, safety,* and *welfare* of the park's residents. There is no evidence in the record that demonstrates that the roof and width standards have any impact upon the health, safety, or welfare of the park's residents. Rather these standards appear to reflect the aesthetic preferences of defendants. We find that such standards are not reasonable in light of the language of § 31–44–1.5.

Furthermore the Legislature has recently amended § 31–44–4(f) by adding subdivision 5, which reads as follows:

"(5) *No owner or operator of a mobile and manufactured home park shall require a mobile or manufactured home at the time of sale or foreclosure, which is safe, sanitary and in conformance with aesthetic standards, to be removed from the park * * *.*

* * * * * *

"The mobile and manufactured home park owner shall have the burden of showing that a mobile home is unsafe, unsanitary, or fails to meet the aesthetic standards of the development. *No aesthetic standard shall be applied against a mobile and manufactured home if such standard relates to physical characteristics, such as size, original construction materials or color which cannot be changed without undue hardship to the tenant.*" (Emphasis added.) P.L.1991, ch. 234, § 1.

Under this subdivision, "[n]o aesthetic standard shall be applied against a mobile and manufactured home if such standard relates to physical characteristics, such as size, original construction materials * * * which cannot be changed without undue hardship to the tenant." Clearly the roof and size requirements are aesthetic standards that relate to physical characteristics and cannot be changed without causing hardship to the plaintiffs.

Accordingly the plaintiffs' appeal is sustained, the decision of the trial justice is reversed, and the papers of this case are remanded to the Superior Court with our decision endorsed thereon.

FAY, C.J., did not participate.